**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**AT BECKLEY**

DANIEL FOX, JR., and
ROBERT SOVINE, *Individually*
*and for Others Similarly Situated*,

Plaintiffs,

v. CIVIL ACTION NO. 5:26-cv-00336

JAN-CARE AMBULANCE, INC.

Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Jan-Care Ambulance, Inc.'s ("Jan-Care") Partial Motion to Dismiss [ECF 21], filed May 27, 2026. Plaintiffs Daniel Fox, Jr. and Robert Sovine (collectively "Plaintiffs") responded in opposition [ECF 25] on June 10, 2026, to which Defendant replied [ECF 30] on June 17, 2026.

**I.**

Mr. Fox is an emergency medical technician ("EMT") employed by Jan-Care since 2024. [ECF 24 ¶ 14]. From June 2012 through July 2025, Mr. Sovine was likewise employed as a Jan-Care EMT. [*Id.* ¶ 15]. As EMTs, Plaintiffs' "duties include[d] responding to emergency calls, evaluating patients, providing emergency medical care, and transporting patients to medical facilities." [*Id.* ¶ 36]. Plaintiffs' First Amended Complaint (the "Complaint") alleges Jan-Care employed Plaintiffs as EMTs in West Virginia, Virginia, and Pennsylvania. [*Id.* at ¶¶ 33-34]. The Complaint specifically alleges Mr. Sovine "worked in Pennsylvania on two to three occasions per

24-hour shift during his employment, including in Greene, Washington, and Allegheny counties." [*Id.* at ¶ 35].

While employed by Jan-Care, Plaintiffs routinely worked more than 40 hours per week. [*Id.* ¶ 37]. These shifts were not out of the ordinary, however, as other hourly employees at Jan-Care customarily work "approximately 2 to 3[,] 24-hour shifts each week (48 to 72 hours in a work week)." [*Id.* ¶ 42]. Hourly Jan-Care employees are mandated to report their time via a designated timekeeping system supplied by Jan-Care. [*Id.* ¶ 43].

It is Jan-Care's practice to deduct "3 or more hours during 24-hour shifts" for what is referenced as its "sleep time" policy. [*Id.* ¶ 46]. Under this policy, Plaintiffs' time is deducted "regardless of whether their 'sleep time' is on duty and/or interrupted." [*Id.* ¶ 51]. Plaintiffs also "cannot enjoy an uninterrupted night's sleep" during their shifts and are "required to remain on Jan-Care's premises, remain on call, monitor phones and pagers for calls that come in, respond to calls, and otherwise continue performing their regular job duties during their 'sleep time.'" [*Id.* at ¶¶ 47–49, 51]. The Complaint alleges "Jan-Care improperly deducted 'sleep time' from Fox that he actually spent performing compensable work, which resulted in him not being paid at least 1.5 times his regular rate of pay for the hours he worked over 40 in a workweek during that pay period." [*Id.* ¶ 50].

In addition to the sleep time policy, the Complaint also describes Jan-Care's shift differential pay scheme and incentive pay for good attendance that it otherwise "excludes from [Plaintiffs'] regular rates of pay for overtime purposes during workweeks the shift differentials are earned and the Hourly Employees work in excess of 40 hours." [*Id.* ¶ 59]. Simply put, rather than distributing overtime based on the shift differential premiums, Jan-Care pays overtime according to an employee's base rate. [*Id*. at ¶ 60]. For instance, in February 2026, Jan-Care paid opt-in

Plaintiff Jayden Willis $70.53 in shift differentials but only paid his overtime in accord with "his $12.68 and $13.59 base rates of pay and not his true regular rate of pay including all remuneration." [Id. ¶¶ 60-61]. Based on these facts, Plaintiffs allege "Jan-Care does not pay Plaintiffs and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for hours they work in excess of 40 in a workweek." [*Id*. at ¶ 62].

Plaintiffs thus assert claims under the Fair Labor Standards Act (the "FLSA"), the Pennsylvania Minimum Wage Act (the "PMWA"), and the Pennsylvania Wage Payment and Collection Law (the "WPCL"). Plaintiffs seek to bring their FLSA claims as a collective action and their state law Pennsylvania claims as a class action. [*Id*. ¶¶ 18–20].

On May 27, 2026, Jan-Care moved to partially dismiss the state law wage claims, contending neither the PMWA nor WPCL "apply to employees based in . . . states" outside Pennsylvania. [ECF 22 at 4]. Specifically, Jan-Care contends Plaintiffs have failed to satisfy the five-factor test employed by courts in determining whether an employee is "based in Pennsylvania" for purposes of the WPCL. Jan-Care thus asserts Plaintiffs have failed to plausibly allege their employment in Pennsylvania "in a manner sufficient to trigger the protections of the WPCL or the PMWA," warranting dismissal of their state law claims as a matter of law. [*Id*. at 7].

Plaintiffs reject Jan-Care's assertions and maintain their PMWA and WPCL claims are properly asserted inasmuch as Jan-Care has "permitted [its employees] to work in Pennsylvania." [ECF 25 at 6]. Plaintiffs further contend satisfaction of the five-factor test relied on by Jan-Care is irrelevant at the pleading stage, as they need only "allege they worked for Jan-Care *in Pennsylvania* and were not paid wages owed to them under Pennsylvania law." [*Id.* at 2 (emphasis in original)]. To the extent disputes remain as to "where [Plaintiffs] worked, where they were based, or how Jan-Care staffed Pennsylvania ambulance work," Plaintiffs maintain those

matters are factual questions subject to disposition following discovery and development of a complete evidentiary record. [*Id*. at 6]. At bottom, Plaintiffs maintain they have plausibly alleged Jan-Care (1) is a covered employer under both the PMWA and WPCL, and (2) has subjected Plaintiffs to its unlawful pay policies while working in Pennsylvania, rendering their claims sufficient under Pennsylvania law. [*Id*. at 8–9]. To the extent the Court disagrees, Plaintiffs alternatively seek leave to amend to cure any identified deficiencies within their Complaint. [*Id.* at 9].

Jan-Care's reply largely reiterates its initial assertions respecting Plaintiffs' deficient Pennsylvania employment connection. It also contests Plaintiffs' alternative amendment request, contending they have failed to make a "proper showing" that additional pleaded facts would cure the defects in their Complaint. [ECF 30 at 6].

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-*

*Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."
>
> In keeping with these principles a court considering a motion to dismiss can choose

> to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Rule 12(b)(6) standard requires a court to "accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (citing *Twombly*, 550 U.S. at 555–56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The Court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## III.

### *A. Pennsylvania Wage Law Claims*

#### 1. The PMWA

The PMWA establishes the minimum wage rates for employees who are working within Pennsylvania. *See* 43 PA. STAT. AND CONS. STAT. § 333.104. The statute aims to protect individuals employed within the state from receiving "unreasonably low" wages that do "not fairly commensurate with the value of the services rendered." *Chevalier v. Gen. Nutrition Ctrs., Inc.*, 656 Pa. 296, 323, 220 A.3d 1038, 1055 (2019) (citing 43 PA. STAT. AND CONS. STAT. § 333.101); *In re Amazon.com, Inc.*, 667 Pa. 16, 32, 255 A.3d 191, 200–201 (2021) ("[T]he PMWA manifests . . . [Pennsylvania]'s strong public policy protecting an employee's right to be adequately compensated for all hours for which they work[.]"). While some PMWA protections mirror those within the Fair Labor Standards Act ("FLSA"), Pennsylvania courts have construed the state

statute as providing more stringent wage protections than the "national floor" established by its federal counterpart. *Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 607 Pa. 527, 556, 8 A.3d 866, 883 (2010).

With respect to overtime, the PMWA mandates, "[e]mployes shall be paid overtime not less than one and one-half the employe's regular rate . . ." 43 PA. STAT. AND CONS. STAT. § 333.104(c). In enacting the PMWA, the Pennsylvania legislature intended to provide an avenue for employees to enforce "the depression of wages by some employers." *See In re Amazon.com, Inc.*, 667 Pa. at 32, 225 A.3d at 201. To successfully state a claim for unpaid wages under the PMWA, plaintiffs must demonstrate (1) they were an employee under the Act, (2) the defendant is an employer under the act, and (3) the employer "failed to pay the plaintiff the wage required by the PMWA." *Beauregard v. Broadway Electric Service Corp.*, No. 2:21-cv-1600, 2022 WL 2293969, *5 (W.D. Pa. June 24, 2022) (citing 43 PA. STAT. AND CONS. STAT. §§ 333.103, 333.104). The PMWA defines employee as "any individual employed by an employer." 43 PA. STAT. AND CONS. STAT. § 333.103(h). An "employer," in turn, "includes any individual, partnership, association, corporation, business trust, or any group or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe[e]." *Id.* at § 333.103(g).

Importantly, though the PMWA neither "expressly exclude[s] or permit[s] actions for minimum wage brought by out-of-state employees [,]" *Chouinard v. Perfection Snacks*, No. 22-3276, 2023 WL 4980939, at *2 (E.D. Pa. Aug. 3, 2023), the Act "has been construed to extend its protections to [Pennsylvania-based] employees who work outside of Pennsylvania." *Truman v. DeWolff, Boberg & Assocs.*, No. 07–01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009); *see also Friedrich v. U.S. Computer Systems, Inc.*, CIV. A. No. 90-1615, 1996 WL 32888, at *8 (E.D. Pa. Jan. 22, 1996). Indeed, given the PMWA's stated "purpose of protecting 'employees employed

in the Commonwealth of Pennsylvania[,]'" *Chouinard*, 2023 WL 4980939 at *2 (quoting 43 PA. STAT. AND CONS. STAT. § 333.101), it is apparent that employees seeking safe-harbor under the Act must possess some degree of connection to Pennsylvania, though residency is not required "to successfully establish this connection." *Matthews v. BioTelemtry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018) (citing *Friedrich*, 1996 WL 32888 at *8–9). Courts have thus "held that [a] [p]laintiff must put forth sufficient factual allegations to establish that he is 'based in Pennsylvania' to be afforded protection under the PMWA." *Id.*; *Friedrich*, 1996 WL 32888 at *8 ("Although [employees] did not reside in Pennsylvania, they were hired by the defendant's Broomall, Pennsylvania office, to which they reported daily by telephone . . . Although they seldom made physical appearances in Broomall, this evidence could allow the jury to conclude that [employees] were based in Pennsylvania.").

In determining whether an employee ultimately satisfies the "based in Pennsylvania" requirement, courts give consideration to the following five factors: (1) the location of the "[e]mployer's headquarters[,]" (2) the "[e]mployee's physical presence working in Pennsylvania[,]" (3) the "[e]xtent of [the] employee's contact with [the] Pennsylvania employer (i.e. reporting, direction, supervision, hiring, assignment, termination)[,]" (4) the "[e]mployee's [place of] residence[,]" and (5) the "[e]mployee's ability to bring his claim in another forum." *Chouinard*, 2023 WL 4980939 at *3 (citing *Matthews*, 2018 WL 3648228 at *3).

**2. The WPCL**

The WPCL pertinently provides "[e]very employer shall pay all wages. . . due to his employees on regular paydays designated in advance by the employer. Overtime wages may be considered wages earned and payable in the next succeeding pay period." 43 PA. STAT. AND

CONS. STAT. § 260.3(a). The statute "provide[s] an employee with a statutory remedy for an employer's breach of its contractual obligation to remit wages.'" *Aita v. NCB Mgmt. Servs., Inc.*, 2024 Pa. Super. 223, 324 A.3d 611, 616 (2024) (internal citations and quotations omitted), *appeal granted on other grounds*, 337 A.3d 959 (Pa. 2025); *see also Oberneder v. Link Computer Corp.*, 449 Pa. Super. 528, 532, 674 A.2d 720, 722 (1997), *aff'd*, 548 Pa. 201, 696 A.2d 148 (1997); *Scungio Borst & Assocs. v. 410 Shurs Lane Developers*, *LLC*, 636 Pa. 621, 627, 146 A.3d 232, 235 (2016) (explaining the WPCL "provide[s] employees a mechanism to disgorge wrongly withheld wages from their employers."). Unlike the PMWA, the WPCL is thus a remedy for contractual breaches rather than statutory violations and "does not provide relief for wages due under state or federal law." *Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726, 733–34 (M.D. Pa. 2007) (dismissing plaintiff's WPCL claim relying on the PMWA as the source of defendant's obligation to pay wages). Simply put, a plaintiff cannot repurpose a PMWA violation as grounds for a WPCL claim. Indeed, the terms of an express contract must reveal the contractual obligation for wages, or the plaintiff will not be entitled to relief. *Grabowski v. Dietz & Watson, Inc.*, No. 16-5472, 2017 WL 4284115, *3 (E.D. Pa. Sept. 27, 2017). At bottom, the WPCL "ensure[s] that employees are paid on their regular payday and, if not timely paid, . . . make[s] them whole by penalizing employers who fail to pay regular wages without good cause." *Aita*, 2024 Pa. Super. 223, 324 A.3d at 616.

To plead a successful WPCL claim, a plaintiff must allege "contractual entitlement to compensation from wages and a failure to pay that compensation." *Braun v. Wal-Mart Stores, Inc.*, 2011 Pa. Super. 121, 24 A.3d 875, 954 (2011) (internal citations and quotations omitted), *aff'd*, 630 Pa. 292, 106 A.3d 656 (2014); *see also Minehan v. McDowell*, No. 21-5314, 2023 WL 5432508, at *15 (E.D. Pa. Aug. 22, 2023) ("To prevail on a WPCL claim, a plaintiff must establish:

(1) the entity that withheld wages from the plaintiff is an 'employer' under the WPCL; (2) the plaintiff is contractually owed the withheld wages; and (3) the employer, in fact, withheld the contractually owed wages."), *aff'd*, No. 23-2737, 2024 WL 4403873 (3d Cir. Oct. 4, 2024)). A plaintiff must also "allege that he was employed in the Commonwealth of Pennsylvania." *Hides v. CertainTeed Corp.*, No. 94-7352, 1995 WL 458786, *2 (E.D. Pa. July 26, 1995). While the WPCL is silent as to who constitutes an "employee" for purposes of the Act, the term "employer" is defined as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing a person in the Commonwealth." 43 PA. STAT. AND CONS. STAT. § 260.2a.

As with the PMWA, courts have consistently concluded "protections contained in the WPCL extend only to those employees based in Pennsylvania," *McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619, 629 (E.D. Pa. 2009) (internal citations and quotations omitted) (collecting cases), though residency and citizenship alone are not dispositive. *Eastland v. du Pont*, No. CIV. A. 96-2312, 1996 WL 421940, at *5 (July 23, 1996). Absent a Pennsylvania choice of law or forum selection clause in the employment contract, courts consider the same five factors set forth above in determining whether an employee conclusively satisfies the "based in Pennsylvania" requirement. *Id.* at 631–32 (applying the five factors in determining "whether an employee who worked only partly in Pennsylvania" was "'based in Pennsylvania' for purposes of the WPCL"); *see also Eastland*, 1996 WL 421940 at *5 (finding "something less than full-time in-state employment can trigger the WCPL's protections.").

***B. Analysis***

As previously mentioned, Jan-Care seeks dismissal of Plaintiffs' PMWA and WPCL claims, contending Plaintiffs have failed to plausibly allege they were "employee[s] 'based

in Pennsylvania [,]' so as to fall within the protection of either statute."[1] [ECF 22 at 4]. In support, Jan-Care employs the multifactor "based in Pennsylvania" test in efforts to demonstrate Plaintiffs' purportedly deficient allegations. Reliance on that factoring analysis, however, is of limited utility at this early stage of the litigation. To survive dismissal, Plaintiffs need only allege the presence of a Pennsylvania connection.

As to Mr. Sovine, Plaintiffs have supplied the minimal allegations necessary to establish this connection by alleging (1) "Jan-Care employed [him] as an EMT in West Virginia, Virginia, and Pennsylvania from approximately June 2012 until July 2025," and (2) he "worked in Pennsylvania on two to three occasions per 24-hour shift during his employment, including in Greene, Washington, and Allegheny counties." [ECF 24 at ¶¶ 33, 34]. Respecting Mr. Fox, though Plaintiffs likewise assert Jan-Care employed him as an EMT in West Virginia, Virginia, and Pennsylvania [*Id*. at ¶ 33], the Complaint is devoid of any further allegations specifying the extent of his work in Pennsylvania. While it is apparent "something less than full-time[,] in-state employment" can trigger protection under both Acts, the current allegations respecting Mr. Fox fail to provide the detail necessary to bring him under the purview of either statute. *Eastland*, 1996 WL 421940 at *5. Moreover, additional allegations regarding Mr. Fox will aid the Court and the parties in framing the appropriate subjects for discovery.

[1] To the extent Jan-Care asserts Plaintiffs' Pennsylvania claims likewise fail inasmuch as Jan-Care is a West Virginia entity, that position is meritless given neither the PMWA, nor the WPCL's definition of "employer" requires Pennsylvania incorporation. *See* 43 PA. STAT. AND CONS. STAT. § 333.103(g) (defining "employer" under the PMWA as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe."); 43 PA. STAT. AND CONS. STAT. § 260.2a (defining "employer" under the WPCL as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth.").

## IV.

Based on the foregoing discussion, the Court **GRANTS** Jan-Care's Partial Motion to Dismiss [**ECF 21**] and **DISMISSES WITHOUT PREJUDICE** Plaintiff Fox's PMWA (Count II) and WPCL (Count III) claims, subject to repleading in accordance with the *Federal Rules of Civil Procedure*, on or before **September 7, 2026**.

Additionally, Jan-Care is advised that any future dispositive motion will be denied summarily if it lacks a thorough discussion of the applicable law as to each respective claim, as opposed to simply collapsing the two statutory standards and their collateral elements.

The Clerk is **DIRECTED** to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: August 24, 2026

Frank W. Volk
Chief United States District Judge